IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE CITY OF PRICHARD, ALABAMA, )<br>)<br>Plaintiff/Counterclaim Defendant, )<br>)<br>v. )<br>)<br>LEVEL 3 COMMUNICATIONS, LLC, )<br>)<br>Defendant/Counterclaim Plaintiff. ) | FILED JAN 12 '04 AM 10:54 USDCALS<br><br><br>CIVIL ACTION NO. 03-248-P-C |

DEFENDANT LEVEL 3 COMMUNICATIONS' OPPOSITION
TO PLAINTIFF CITY OF PRICHARD'S
PARTIAL MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Local Rules 7.1 & 7.2(b), and the Court's December 10, 2003 Order, Defendant/Counterclaim Plaintiff Level 3 Communications, LLC ("Level 3") respectfully submits the following Opposition to the City of Prichard's ("City") Partial Motion for Summary Judgment ("PMSJ"). In support of this Opposition, Level 3 incorporates herein its Response To Plaintiff City Of Prichard's Determinations Of Undisputed Fact, and Level 3's statement of additional undisputed facts therein ("Def. Resp. SoF").

I. THE CITY IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE LEVEL 3'S CHALLENGES TO THE CITY'S TAX ARE RAISED AS DEFENSES TO THE CITY'S TAX COLLECTION SUIT.

   A. The Rule 12(b)(1) Standard Governs This Motion, Not The Rule 56 Summary Judgment Standard Because The Court's Subject Matter Jurisdiction Is Challenged.

As a threshold matter, Level 3 notes that the City's challenge on the Tax Injunction Act issue is not properly brought as a motion for summary judgment. Challenges to this Court's

subject matter jurisdiction must be brought through motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), and may not be converted to motions for summary judgment. The reasoning is simple: if this Court lacks jurisdiction, it is without authority to render judgment. Summary judgment pursuant to Rule 56 is not the correct procedure for dismissing based on lack of subject matter jurisdiction because a grant of summary judgment is a decision on the merits. Because the City improperly requested judgment on subject matter jurisdiction, Level 3 respectfully requests this Court to deny the City's motion. However, if this Court agrees to consider the City's motion, it must proceed under the standards applicable to Rule 12(b)(1) motions.

### B. The Court Must Determine That The Fee The City Seeks To Collect From Level 3 Constitutes A Tax Under Alabama State Law And The Tax Injunction Act.

The first step the Court must take in evaluating a motion to dismiss based on the Tax Injunction Act is to determine whether, in fact, the challenged impositions are taxes. The question of whether a monetary exaction constitutes a tax for the purposes of the Tax Injunction Act is a question of federal law for the federal district court to determine. *See Lightwave Technologies, L.L.C. v. Escambia County*, 43 F. Supp. 2d 1311, 1314 (S.D. Ala. 1999). A court does not lose or retain jurisdiction over a case merely because one of the parties has alleged that an unlawful tax exists absent a determination that a tax is indeed at issue. The parties' labels or characterizations of the tax are not dispositive. *Id.* at 1314. To the contrary, a court must decide whether the monetary exaction constitutes a tax in accordance with the congressional policies underlying the Act. *Id.* In sum, it is the substance of the tax, not what the parties raise on the face of their pleadings, that determines whether a tax is at issue so as to trigger Tax Injunction Act scrutiny. Thus, the mere fact that Level 3 contends in its responsive pleadings that the City

seeks to collect an unlawful tax is not a legal basis for depriving this Court of jurisdiction.[1]

Both Alabama State law and federal law demonstrate that the challenged impositions are taxes.[2] The Supreme Court of Alabama has recently clarified the authority of local governments to impose fees on telecommunications providers. In *Lightwave Technologies, LLC v. Escambia County*, 804 So. 2d 176 (Ala. 2001), the court addressed a challenge to a $1 per linear foot annual "fee" imposed on Lightwave Technologies, a provider of interexchange telecommunications services (in lay terms, long distance services). The court held the charge to be an unlawful tax. The elements that the court used to distinguish a permissible administrative "fee" from an unlawful "tax" were (1) that the County also imposed a bond requirement, (2) that the purpose of the charge was to generate revenue, (3) that the amount of the charge was not rationally related to the County's expected costs of repairing the right-of-way, and (4) that the money was not reserved in a fund for right-of-way management use. 804 So.2d at 179-80; *see also Lightwave Technologies,* 43 F. Supp. 2d at 1316 (reaching same conclusion that the County's fee constitutes a tax).

The compensation imposed on Level 3 by the City bears all the markings of a tax

---

[1] Although it denied in its Answer to Level 3's Counterclaim that the money it seeks to collect constitutes a tax (*see* Answer at ¶¶ 61-65), in bringing its motion challenging this Court's jurisdiction the City appears to concede that it is a tax. Because it is the nature of the tax, interpreted under federal law, not the parties' characterization of it that controls jurisdiction, the City must have had some basis—other than Level 3's pleadings—on which to base its allegation that Act deprives this Court of jurisdiction. In other words, in bringing its motion, the City must have had a good faith belief that the money in question constitutes a tax, otherwise it could not have alleged that the Act deprived this Court of jurisdiction. As such, the City should be precluded from any further attempt to deny that it is indeed seeking to impose to taxes on Level 3.

[2] Contrary to the City's contentions, however, the City's attempts to impose taxes, and Level 3's challenge thereto, do no deprive the Court of jurisdiction in this case, as explained in Section I.C. below.

3

identified in both *Lightwave* cases: it exceeds the City's costs, it was intended to generate revenue from Level 3, and its proceeds have been used for general municipal purposes. First, through its Interim Rights Of Way Use Agreement ("Interim Agreement"), the City imposed numerous requirements that assure that its actual costs of managing Level 3's construction were covered by Level 3, including a construction bond, insurance, indemnification, and Article 1.12, which explicitly required payment by Level 3 of all of the City's costs. (Defendant's Responsive Exhibit ("Def. Resp. Exh.") 2, Arts. 1.9, 1.12, 7, 8). Second, the City has never calculated its costs of managing Level 3's use of the public rights-of-way. (Def. Resp. SoF ¶ 24). As such, the monetary compensation requirements cannot be demonstrated to be even a fair approximation of the City's costs. Indeed, the City does not contend that the annual use fees imposed in Article 4.2 of the Interim Agreement are related or limited to the City's costs, if any, of managing Level 3's construction in and use of the public rights-of-way. (Def. Resp. SoF ¶ 24).

Third, the City's goal in imposing the annual charge on Level 3 was to generate revenue for the City. Indeed, the money received from Level 3 has gone to pay for wholly unrelated matters. For example, in Resolution No. 803-99, the City appropriated $21,000 annually from the money received from Level 3 for payment of garbage collection costs. (Def. Resp. Exh. 7; Def. Resp. SoF ¶ 25). Moreover, the City has spent over $154,000 of the money received from Level 3 to purchase garbage trucks. (Def. Resp. SoF ¶ 26). Therefore, the revenue received from Level 3 has gone to general use by the City.

Accordingly, the City imposed the fees on Level 3 for the purpose of raising revenue to be spent for the benefit of the entire community and, as such, the fees are properly characterized as a tax. *See Lightwave Technologies,* 43 F. Supp. 2d at 1314 (citing *Folio v. City of Clarksburg,*

134 F.3d 1211 (4th Cir. 1998)).

### C. The Tax Injunction Act Does Not Deprive Federal Courts Of Jurisdiction In Cases Where Validity Of Tax Is Challenged As A Defense To A Tax Collection Suit.

Even though the fees the City seeks to collect from Level 3 constitute a tax, the Tax Injunction Act does not deprive this Court of jurisdiction because the City instituted this action to compel payment. Generally, the Tax Injunction Act ("The Act") deprives the federal district courts of jurisdiction to enjoin the collection of state and local taxes. *See* 28 U.S.C. § 1341. However, the Act does not deprive the federal courts of jurisdiction over *all* actions involving state or local taxes. It only bars suits brought by taxpayers seeking to invalidate state law taxes. In those circumstances where the taxing entity brings suit, the Act "does not bar collection suits, ***nor does it prevent taxpayers from urging defenses in such suits that the tax for which collection is sought is invalid***." *Jefferson County v. Acker*, 527 U.S. 423, 435 (1999) (emphasis added); *Louisiana Land & Exploration Co. v. Pilot Petroleum Corp.*, 900 F.3d 816, 818 (5th Cir. 1990) (the Act does not bar federal court jurisdiction where suit was filed to collect a state tax, rather than enjoin, suspend, or restrain the collection of taxes); *Appling County v. Municipal Elec. Auth. Of Ga.*, 621 F.2d 1301, 1303-04 (5th Cir. 1980) (where suit is initiated not to inhibit the collection of taxes, but to require the collection of additional taxes, the Act does not apply).

The City initiated this action to collect payments that, as demonstrated above, are taxes. Thus, the City as the local taxing authority—not Level 3 as the taxpayer—initiated this suit as a collection action. Only in its Answer, Affirmative Defenses and Counterclaims did Level 3 assert that the taxes in question cannot be enforced because they are unlawful. (Answer, Affirmative Defenses, and Counterclaims of Level 3 Communications, LLC, p. 3 (Seventh Affirmative Defense) & ¶¶ 56-67). In other words, Level 3 has urged in its *defensive responses* that the tax the City seeks to enforce is invalid. As a result, under established Supreme Court

5

precedent, Level 3's claims and defenses do not constitute an attempt to restrain the enforcement or collection of state taxes, but instead constitute a defense to the City's collection action fully within this Court's jurisdiction. *See Jefferson County v. Acker*, 527 U.S. at 434. Moreover, it has no bearing on the analysis of this case that the City initially brought this suit in state court and Level 3 subsequently removed it to federal court. *See e.g., id.* at 427 (case removed from state court to federal district court, yet, Supreme Court held the Tax Injunction Act does not bar federal court adjudication). Level 3 removed the case based on both Federal Question and Diversity grounds, and the City did not challenge that removal.

Therefore, Level 3 raising the validity of the tax in its Answer, Affirmative Defenses and Counterclaims against the City's collection suit does not deprive this Court of jurisdiction under 28 U.S.C. § 1341, and this Court should deny the City's Motion.

## II. THE STATUTE OF LIMITATIONS HAS NOT RUN ON LEVEL 3'S SECTION 1983 CLAIMS BECAUSE THE CITY'S VIOLATIONS OF LEVEL 3'S RIGHTS ARE ONGOING

### A. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *United States v. Mallard*, 2003 U.S. Dist. LEXIS 5619, *3 (S.D. Ala. Mar. 10, 2003). "The substantive law will identify which facts are material and which are irrelevant." *Stedman v. Bizmart*, 219 F. Supp. 2d 1212, 1214 (S.D. Ala. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Moore v. Iron Will, Inc.*, 2001 U.S. Dist. LEXIS 2605. *8 (S.D. Ala. Feb. 21, 2001), (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### B. The City's Enforcement Of Resolution 800-99 And The Interim Agreement Constitutes Ongoing Violations Of Level 3's Rights Under Section 1983 And Are Not Barred By The Statute Of Limitations

Level 3's Section 1983 claim is not time barred because the City has committed continuing violations of Level 3's rights within the applicable statute of limitations. Generally, a Section 1983 action must be brought within the time that state law provides for bringing a personal injury claim. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). In Alabama, the action must be brought within two years of the date the claim accrued. *Morrow v. Town of Littleville*, 576 So.2d 210, 213 (Ala. 1991). However, the determination of when a Section 1983 action accrues is a question of federal law. *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996); *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987).

The question of when a Section 1983 claim accrues depends on whether the conduct giving rise to the claim is part of a continuing violation of a party's rights. Where a continuing violation of rights can be shown, a party is entitled to bring suit challenging all conduct that was a part of that violation, even if some of that conduct occurred outside the limitations period. *See Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). The commencement of the statute of limitations period may be delayed until the most recent act taken to deprive the party of its rights. *Id.*

A party may allege a continuing violation if it can show a present and ongoing violation of the law within the statute of limitations period. *Fleming v. New York Univ.*, 865 F.2d 478, 482 (2d Cir. 1989). Similarly, if a party is challenging an unlawful policy, as long as the unlawful policy is in effect during the limitations period and there is some enforcement of the policy, that party's claim is not time barred. *See Beasley v. Alabama State Univ.*, 3 F. Supp. 2d 1325, 1333 (M.D. Ala. 1998) (citing *Abrams v. Baylor College of Med.*, 805 F.2d 528 (5th Cir. 1986)).

In November 1999, the City adopted Resolution 800-99 which required that all

7

telecommunications providers occupying the City's rights of way enter into a standard interim use agreement. (Def. Resp. Exh. 1). Shortly thereafter, Level 3 was required to enter into the City's "Interim Rights-of-Way Usage Agreement" in order to construct its telecommunications network to provide telecommunications services. (Def. Resp. SoF ¶¶ 19, 20). Level 3's primary competitor in the region, BellSouth is not subject to such a requirement. (Def. Resp. SoF ¶¶ 28-30). As more fully alleged in Level 3's Counterclaims, and in the Motion For Summary Judgment that Level 3 anticipates filing shortly after submission of this Opposition, the City's actions and requirements violated Level 3's rights under 47 U.S.C. § 253 and/or the Supremacy Clause of the U.S. Constitution.[3]

This violation, however, was not the last of what was to become the City's continuing violation of Level 3's rights. The City continued to violate Level 3's rights each time it enforced the terms of the Interim Agreement and Resolution against Level 3. Each additional payment or required performance of the Interim Agreement's unlawful terms constituted a new harm. For example, each time the City demanded payment of the $2.50 per foot charge—in 2000, 2001, 2002 and 2003—Level 3 suffered a new harm. (*See* Def. Resp. SoF ¶ 23). As a result, Level 3's most recent harms were in January 2003 when the City demanded payment of the $2.50 per foot fee and March 2003 when the City brought suit to enforce the Interim Agreement. Thus, as the last act in the City's ongoing violation of Level 3's rights, the filing of the above captioned action should cause the statute of limitation to begin to run.

In addition, the City's requirement that Level 3 enter into the Interim Agreement while

---

[3] In its Motion, the City does not raise the merits of Level 3's underlying claim of a violation of its federal rights, and as such, Level 3 need not establish the merits of its claims here. Nonetheless, it sets forth herein sufficient facts to establish that the alleged violation was ongoing.

8

not requiring that BellSouth enter into an agreement constituted an enforcement of an unlawful and discriminatory policy in violation of Level 3's rights. (Def. Resp. ¶¶ 28-30). This policy began when the City required Level 3 to consent to the terms of the Resolution and Interim Agreement, and continues through the filing of the above captioned collection action. Because this policy, discrimination, and violation of Level 3's federal rights has been ongoing during the current limitations period—the two years preceding the filing of Level 3's counterclaim—Level 3's Section 1983 claim is not time-barred. *See Beasley*, 3 F. Supp. 2d at 1333.

### III. CONCLUSION

Based on the foregoing, Level 3 respectfully submits that the monetary imposition sought to be enforced by the City should be declared a tax, and that the Court should find that the Tax Injunction Act does not apply in this case to divest the Court of jurisdiction over Level 3's defensive responses (*e.g.*, Affirmative Defenses and Counterclaims) challenging the enforceability of that tax. In addition, the Court should find that the City's violation of 47 U.S.C. § 253 through the terms of the Interim Agreement and Resolution No. 800-99 are continuing, and thus Level 3's Section 1983 claims are not barred by the statute of limitations. Therefore, the City's Partial Motion for Summary Judgment must be denied, and Level 3 should be granted partial summary judgment on the City's Amended Answer and Fifth Affirmative Defense set forth therein.

Respectfully submitted,

*[signature]*

H. William Wasden (WASDW4267)
W. Perry Hall (HALLW9043)
BOWRON, LATTA & WASDEN, P.C.
Post Office Box 16046
Mobile, Alabama 36616
Telephone:    251-344-5151
Facsimile:    251-344-9696

*[signature]*

T. Scott Thompson
K.C. Halm
COLE, RAYWID & BRAVERMAN, LLP
1919 Pennsylvania Avenue, NW
Suite 200
Washington, DC  20006
202-659-9750
202-452-0067 (fax)

**Attorneys for Level 3 Communications, LLC**

January 12, 2004

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 12th day of January, 2004, served a copy of the foregoing by hand delivery to the following counsel of record:

Arthur J. Madden, III, Esquire
MADDEN & SOTO
465 Dauphin Street
Mobile, Alabama 36602

_____
COUNSEL