IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED FEB 25 '04 PM 4:31 USDCALS

| | |
|---|---|
| The City of Prichard, Alabama,<br>A municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>Level 3 Communications, LLC,<br>A Delaware limited liability company, | CASE NO. 03-248-P-C |

**PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO COUNTERCLAIM COUNT 2**

NOW COMES the plaintiff City of Prichard and moves the court to grant summary judgment in its favor on Level 3's second counterclaim (and related affirmative defenses 6 and 7) pursuant to Rule 56 of the Federal Rules of Civil Procedure. As grounds for this motion the City alleges that there are no disputed issues of material fact as to this count, and that the City is entitled to judgment as a matter of law.

<u>Procedural Posture</u>

Both the City and Level 3 have moved for summary judgment on counterclaim count 2, (and related affirmative defenses 6 and 7) in which Level 3 alleges the use fee it has agreed to pay the City to use the municipal rights-of-way is in fact an illegal tax under state law. The City previously moved for summary judgment on this counterclaim count on the

basis that Level 3's claim is barred by the Tax Injunction Act, §28 U.S.C. 1341. The City's motion is pending. By this second motion for summary judgment, the City submits that, as a matter of law, the use fee is not a tax, judgment should be rendered in its favor and Count II of defendant's counterclaims be dismissed.

## Standard for Decision

Rule 56(c) of the Federal Rules of Civil Procedure provides that: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In as much as Level 3's counterclaim is raised under state law, Alabama substantive law provides the basis for decision.

## Facts

The facts as to this claim are not in dispute. (See Suggested Determinations of Undisputed Facts and Conclusions of Law.)

## Argument

### LEVEL 3'S CLAIM IN COUNT II THAT THE FEE IT AGREED TO PAY AS COMPENSATION FOR USE OF THE CITY'S PROPERTY FOR ITS BUSINESS CONSTITUTES A TAX IS WRONG AS A MATTER OF LAW

Level 3's motion for summary judgment on Count II and affirmative defenses 6 and 7 should be denied, and summary judgment rendered for the City. Level 3's argument depends on the court characterizing the use fee Level 3 agreed to pay the City as a "tax," and an unlawful one at that. The short answer is that the use fee is not a tax at all. Rather, Article

4.2 of the Agreement (p. 6 of P.Exh. 11) specifies that the $2.50 per linear foot user fee is the agreed upon compensation for use by Level 3 of the City's property -- its rights of way -- to conduct its commercial enterprise.

The language of Article 4.2 of the Agreement provides in relevant part that Level 3 "...shall pay an annual fee of $2.50 per linear foot of any cable, fiber optic cables, or other pathway permitted by this Agreement to be installed in or of [sic] the [Level 3's] Facilities that makes use of the City's rights-of-way...." The use fee is directly related to the length of cable in the City's right of way.

Prichard's authority to assess a fee from telecommunications companies for use of the right of way is found in Alabama Code §11-43-62, entitled "Regulation of use of streets for telephone, telegraph, etc., lines; sale or lease of franchises and disposition of moneys therefrom," and which provides:

> "The council shall regulate the use of the streets for the erection of telegraph, telephone, electric and all other systems of wires and conduits and may require the same to be placed underground if deemed necessary for the public convenience and safety and generally to control and regulate the use of the streets for any and all purposes.
>
> The council may sell or lease in such manner as it may deem advisable any franchise which it has power to grant, and the moneys received therefor shall be paid into the city treasury."

This statute expressly authorized Prichard to take the action it did when it agreed with Level 3 on the terms of the use of the rights of way by Level 3 and to receive compensation form Level 3 for that use, to be paid into the City treasury.

Level 3 contends that "the only authority specifically granted to the City to impose *taxes* on telecommunications companies is in Alabama Code § 11-51-128(a)." This is an

3

overbroad characterization of §11-51-128(a). That statute relates only to the intrastate activities of companies operating local telephone exchanges and long distance lines in the city[1], but, in any event, §11-51-128(a) is irrelevant. The City's authority to charge a fee for use of rights-of-way is found in Alabama Code §11-43-62. A right-of-way use fee is not a tax and has absolutely nothing to do with the City's power to levy a privilege or business license tax on persons doing business in the City. For example, if a telephone exchange were operating in an Alabama city exclusively on private property, it would be subject to paying a business license tax under §11-51-128(a), but would not be required to obtain a franchise from, and pay a use fee to, the municipality since it would not use the public rights-of-way.[2] A telephone exchange operating in the City using the City's rights-of- way would be subject

---

[1] Alabama Code §11-51-128 provides:
a) The maximum amount of privilege or license tax which the several municipalities within this state may annually assess and collect of persons operating telephone exchanges and long distance telephone lines in this state for the privilege of doing intrastate business within the limits of such municipalities, whether such persons are incorporated under the laws of this state or any other state, is fixed as follows:***
(22) In municipalities having a population of more than 20,000 and less than 175,000, exchange license, $1,110.00 for the first 20,000 inhabitants and $60.00 for each additional 1,000 inhabitants or majority fraction thereof, up to 175,000 population; long distance license, $278.00 for the first 20,000, and $15.00 for each additional 1,000, or majority fraction thereof, up to 175,000 population;

[2] Curiously, in its brief Level 3 suggests it is subject to obtaining a business license under §11-51-128(a) because "...Level 3 is operating both long distance telephone lines and local exchanges [somewhere] in the State using lines [the cable] that pass through Prichard." (defendant's supporting memorandum p. 22) Level 3 does not have, and has never had a Prichard business license. It has never applied for a business license. (Norwood Aff. ¶¶ 15-16, P.Exh. 18; C. Norwood Dep. 72:21;73:1, P.Exh. 30) Level 3 claims it has no end users of its services in Prichard, and claims it neither accepts traffic into its network, nor discharges traffic from its network in Prichard. Its R3 site on Telegraph Road is unmanned. It does not provide local or long distance telephone service in Prichard. (Meade Dep. p.33:13-16;75:3; 98:7-8;31:3-14; 131:2-7; 132;1, P.Exh. 13) If Level 3 is doing business in the City, and is subject to the business license tax, it needs to make application for a business license and pay the applicable tax. But doing so would in no way relieve Level 3 of the obligation of paying the City the agreed upon compensation for the use of the rights-of-way.

to *both* obtaining a business license and obtaining a franchise for which it would pay a use fee.[3]

More than one hundred years ago the United States Supreme Court explained the difference between a privilege tax and a right of way use fee. In *City of St. Louis v. Western Union*, 148 U.S. 92 (1893) the telegraph company complained that the $5 per pole annual fee St. Louis charged for allowing it to place telegraph poles in the right of way constituted an illegal tax. The court said in straight forward language apt to the instant case:

> And, first, with reference to the ruling that this charge was a privilege or license tax. To determine this question, we must refer to the language of the ordinance itself, and by that we find that the charge is imposed for the privilege of using the streets, alleys, and public places, and is graduated by the amount of such use. Clearly, this is no privilege or license tax. The amount to be paid is not graduated by the amount of the business, nor is it a sum fixed for the privilege of doing business. It is more in the nature of a charge for the use of property belonging to the city,--that which may properly be called rental. 'A tax is a demand of sovereignty; a toll is a demand of proprietorship.' State Freight Tax Case, 15 Wall. 232, 278. If, instead of occupying the streets and public places with its telegraph poles, the company should do what it may rightfully do, purchase ground in the various blocks from private individuals, and to such ground remove its poles, the section would no longer have any application to it. That by it the city receives something which it may use as revenue does not determine the character of the charge or make it a tax. The revenues of a municipality may come from rentals as legitimately and as properly as from taxes. *Id.* at 97.

Because the telegraph company took up permanent occupancy of the right of way, unlike the causal traveler, St. Louis was entitled to be compensated. The court said:

> Now, when there is this permanent and exclusive appropriation of a part of the highway, is there in the nature of things anything to inhibit the public from exacting rental for the space thus occupied? Obviously not. Suppose a municipality permits

---

[3] BellSouth operates a telephone exchange in Prichard and pays for an annual business license. (C.Norwood aff. ¶16, P.Exh. 18.)Bellsouth does not have a City franchise, taking advantage of the grandfathering of a statewide franchise predating the Alabama Constitution of 1901 and its requirement in § 220 of a municipal franchise. See *Bellsouth v. City of Mobile*, discussed infra.

5

one to occupy space in a public park, for the erection of a booth in which to sell fruit and other articles; who would question the right of the city to charge for the use of the ground thus occupied, or call such charge a tax, or anything else except rental? So, in like manner, while permission to a telegraph company to occupy the streets is not technically a lease, and does not in terms create the relation of landlord and tenant, yet it is the giving of the exclusive use of real estate, for which the giver has a right to exact compensation, which is in the nature of rental. *Id.* at 99.

Despite the plain language of Article 4.2 of the Agreement (which expressly provides for compensation by Level 3 for use of the City's rights of way), and in the face of the statutory distinction between compensation for use of city property and a privilege or license tax, Level 3 contends that the decision in *Lightwave Technologies v. Escambia County*, 804 So.2d. 176 (Ala. 2001) somehow converts the use fee into an illegal tax. This argument evidences a disregard for the differences in the powers granted counties and cities under Alabama law.

*Lightwave* involved the request by a telecommunications company to use 17 miles of Escambia County's right of way to lay a fiber optic cable. By virtue of Alabama Code § 23-1-85, Lightwave Technologies was given the right to construct in the *county* right of way. That Code section, entitled "construction of electric transmission, telegraph, or telephone lines in right-of-way of county highways" provides:

> The right-of-way is granted to any person or corporation having the right to construct electric transmission, telegraph or telephone lines within this state to construct them along the margin of the right-of-way of public highways, subject to the removal or change by the county commission of the county, except in cases where the State Department of Transportation has jurisdiction over such highway.

The court in *Lightwave* held that §23-1-85 is a limitation on the county's right to impose charges on the use of its rights of way, since the statute limits management of the rights of way "…to the removal or change [of the location of facilities in the right of way]

6

by the county commission of the county." The court held this specific statute governing with telephone companies in the county rights of way (which does not mention the right of the county to be compensated for such use) limited the more general powers of the county found in §23-1-80, under which Escambia County sought to authorize the $1 per linear foot fee. The court reasoned that since there was no authority for the county to impose the $1 per linear foot fee under §23-1-85, and since in Alabama "the power to tax does not inhere in county governmental bodies" *Id.* at 180, the assessment was illegal.

Level 3 fails to contrast the Alabama law governing Escambia County with that governing the City of Prichard. Like Lightwave Technologies, Level 3 sought to install its fiber optic cable within the City of Prichard, using almost 7 miles of the city's rights of way. However, on *city streets* Level 3's use of the rights-of-way is governed by §11-43-62, while along *county highways* its use is governed by §23-1-85. The Alabama Supreme Court, construing the predecessor statute to §23-1-85, held in *Town of New Decatur v. American Telephone and Telegraph*, 58 So. 613, 615 (Ala. 1912) that the term highway does not include municipal streets. "This conclusion is reinforced by the numerous sections of our Code showing that all legislative matters in regard to the streets and other subjects in cities and towns are committed to the municipal authorities." *Id.* at 615.

Level 3 was required by Section 220 of the Alabama Constitution of 1901 to obtain permission from the City of Prichard to use the public rights-of-way. Section 220 of the Alabama Constitution of 1901, which applies to cities but not counties, stipulates that:

> "No person, firm, association, or corporation shall be authorized or permitted to use the streets, avenues, alleys, or public places of any city, town, or village for the construction or operation of any public utility or private enterprise, without first obtaining the consent of the proper authorities of such city, town, or village."

7

Section 220 of the Constitution of 1901 is codified in Alabama Code §11-49-1.[4]

The key distinction between the law governing telephone companies in the county right-of-way, §23-1-85, and the law governing telephone companies in the city right of way, §11-43-62 is this: §11-43-62 expressly empowers municipalities to condition the grant of a franchise to a telecommunications company on payment by the franchisee for the use of the rights of way. Beyond simply managing the rights of way, §11-43-62 [unlike the county statute, §23-1-85] goes on to provide that " the council may sell or lease in such manner as it may deem advisable any franchise which it has power to grant, and the moneys received therefor shall be paid into the city treasury."

In sum Level 3 was expressly required by §220 to obtain a franchise from Prichard to use the rights of way, and § 11-43-62 expressly empowered the City to charge the $2.50 per linear foot fee, and have such funds paid into the city treasury. Level 3 should pay the negotiated compensation for the use by Level 3 of Prichard's rights-of-way. *Lightwave* is not to the contrary.

## Conclusion

Summary judgment on Level 3's counterclaim Count II and affirmative defenses 6 and 7 should be denied because they are erroneously predicated on construing the fee for use

---

[4]  Section 11-49-1 provides:

No person, firm, association or corporation shall be authorized to use the streets, avenues, alleys and other public places of cities or towns for the construction or operation of any public utility or private enterprise without first obtaining the consent of the proper authorities of said city or town.

of the city's property as a tax. Summary judgment should be rendered for the City of Prichard on Count II as a matter of law.

/s/ Arthur J. Madden, III<br>
Arthur J. Madden, III<br>
MADDA0656<br>
Attorney for plaintiff<br>
465 Dauphin St.<br>
Mobile, Alabama 36602<br>
251/432-0380

### Certificate of Service

I hereby certify that I have on this the 25th day of February, 2004, served a copy of the foregoing document on counsel for defendant by placing a copy of the same in the United States mail, first class postage prepaid to the following:

Scott Thompson, Esq.
1919 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C. 20006

/s/ Arthur J. Madden, III<br>
Arthur J. Madden, III