IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

2004 MAR 19 P 5: 18

ILED CLERKS OFFICE
NIGHT DEPOSITORY

| | | |
|---|---|---|
| THE CITY OF PRICHARD, ALABAMA, | ) | |
| | ) | |
| **Plaintiff/Counterclaim Defendant,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 03-248-P-C |
| | ) | |
| LEVEL 3 COMMUNICATIONS, LLC, | ) | |
| | ) | |
| **Defendant/Counterclaim Plaintiff.** | ) | |

DEFENDANT LEVEL 3 COMMUNICATIONS'
OPPOSITION TO
PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO COUNTERCLAIM COUNT 2

Pursuant to Fed. R. Civ. P. 56, Local Rules 7.1 & 7.2, and the Court's February 10, 2004

Order in this case, Defendant Level 3 Communications, LLC ("Level 3") submits this

Opposition to the "Plaintiff's Second Motion For Summary Judgment As To Counterclaim

Count 2" ("Second Motion") filed by Plaintiff City of Prichard ("City"), and by this Opposition

submits that the City's Second Motion should be denied.

I.    **PROCEDURAL POSTURE**

As fully set out in Level 3's Motion To Strike Plaintiff's Second Motion For Summary

Judgment As To Counterclaim Count 2 submitted simultaneously herewith, the City's Second

Motion is procedurally infirm and should be stricken from the record.  On January 14, 2004,

Level 3 moved for summary judgment on all of its Counterclaims, including Count II, which

claims that the annual "fee" imposed by the City is an unlawful tax.  On the same day it filed the

"Second Motion," the City filed its 29-page opposition to Level 3's summary judgment motion.

The City's opposition, however, did not address Level 3's motion on Count II.  Rather, it appears

that it submitted the "Second Motion," addressing Level 3's arguments on Count II, as a veiled attempt to exceed the page limits on oppositions. Moreover, the Second Motion is inconsistent with the City's representations to the Court in support of its request for an extension of time in which to file, and constitutes piecemeal litigation of the case, as the City has already filed another purely legal motion for summary judgment against Count II of Level 3's Counterclaims.

Nonetheless, even if accepted by the Court, the Second Motion fails on the merits, as demonstrated below.

## II.    FACTS

Level 3 agrees that the facts regarding this issue are not genuinely in dispute. In that regard, Level 3 refers the Court to and incorporates herein by reference its brief in support of summary judgment ("Def. Mem.") and its Statement Of Material Facts Not In Dispute ("SMF"). (Def. Mem. at 21-25; SMF ¶¶ 67-84). Level 3 also incorporates by reference herein its response to the City's Suggested Determinations Of Undisputed Facts And Conclusions Of Law.

## III.    ARGUMENT

### A.    THE CITY FAILS TO REBUT LEVEL 3'S DEMONSTRATION THAT THE ANNUAL "FEE" IMPOSED AS A CONDITION OF ACCESS TO THE PUBLIC RIGHTS-OF-WAY IS A TAX

In addressing Count II of Level 3's Counterclaims, the threshold issue is whether the compensation requirement the City seeks to impose and enforce is a tax or a fee. In its brief in support of summary judgment, Level 3 demonstrates that under Alabama substantive law (which the City recognizes governs), the annual compensation requirement is a tax, and that it exceeds the City's authority to tax Level 3. (Def. Mem. at 21-25). The City's Second Motion fails to rebut that demonstration.

In *Lightwave Technologies, LLC v. Escambia County*, 804 So. 2d 176 (Ala. 2001), the Alabama Supreme Court held that an annual "fee" imposed on a telecommunications provider, Lightwave, was legally a "tax" because it exceeded the City's costs of managing Lightwave's use of the public rights-of-way and had as its purpose the generation of revenue for general purposes. *Id.* at 179-80. The City's sole response to *Lightwave* is that the case involved a county, and that as a city, the City has different authority to tax and regulate the use of the public rights-of-way. Setting aside for a moment the issue of the City's powers (addressed below), the City's argument is wrong because the ***classification*** as a "tax" is not dependent on the organizational structure of the local branch of government. The Court's holding in *Lightwave* was not premised on the fact that it was a county imposing the requirement. Thus, the fundamental fact remains unrebutted that under Alabama law, an annual compensation imposition on a telecommunications provider is legally a "tax," not a regulatory fee, if it exceeds the City's cost of managing the use of the public right-of-way and the revenue has been used for general revenue purposes.

In this case, there is no genuine dispute that the $2.50 per foot annual compensation is unrelated to the City of Prichard's cost of managing Level 3's use of the public rights-of-way (the City has never calculated its costs, and admits that the fee "were not related to the City's costs of managing the Level 3 project."). (Plaintiff's Response to Defendant's Request for Admission, No. 9 (Jan. 12, 2004), Def. Exh. 11). And it is undisputed that the City has used the revenues from Level 3 for general purposes unrelated to the public rights-of-way. (SMF at ¶ 75). Indeed, the City does not assert that the fee is cost-based, even in the alternative. Thus, the annual imposition is a tax.

3

Apparently recognizing the weakness of its position under Alabama law, the City relies

on *City of St. Louis v. Western Union*, 148 U.S. 92 (1893), to assert its version of the difference

between a tax and a right of way use fee. The case is unavailing for several reasons. As a

threshold matter, it addressed a fee imposed by St. Louis, and thus concerned Missouri law, as it

existed in 1893. Indeed, the Court's opinion on rehearing emphasizes that the decision was

based on the specific powers set forth in the City of St. Louis Charter, pursuant to the Missouri

Constitution. *City of St. Louis v. Western Union Tel. Co.*, 149 U.S. 465, 467-71 (1893). Thus,

the decision is not relevant to whether the City of Prichard's imposition on Level 3 is a tax or fee

under Alabama substantive law.[1]

Moreover, the Supreme Court of Alabama has much more recently held that a so-called

"fee," even when measured by the amount of public rights-of-way used (in *Lightwave* it was $1

per foot), is in fact a "tax" if it exceeds the City's costs and has been used for general revenue

purposes. 804 So. 2d at 179-80. The City cannot argue that *Lightwave* has been effectively

overruled by a case decide over 100 years earlier, under a different state's law. Finally, the

current case is factually distinguishable. In *City of St. Louis*, the Court's analysis relies on the

fact that the utility had installed poles that impeded traffic or occupied space otherwise useable

for travel. 148 U.S. at 99 ("that space is, so far as respects its actual use for purposes of a

highway and personal travel, wholly lost to the public"). Level 3's installation, in contrast, is

underground, and therefore has no impact whatsoever on the use of the streets or public rights-

---

[1] In Justice Brewer's opinion on rehearing two months later, he also "retreated from the rental
theory, and fell back on the accepted doctrine that municipal fees were properly limited to
regulatory costs." Gillespie & Werner, *Rights of Way Redux . . . Redux,* 107 DICK. L. REV. 877,
878 (2003); *see City of St. Louis,* 149 U.S. at 470-71 ("And so it is only a matter of regulation of
use when the city grants to the telegraph company the right to use exclusively a portion of the
street, on condition of *contributing something towards the expense [the city] has been to in
opening and improving the street*") (emphasis added).

4

of-way for their primary purpose of travel. (Affidavit of C. Loyall Meade at ¶¶ 6-7, Def. Exh.

1). Nor has the City ever claimed that Level 3's facilities impede traffic or utilize space in the

manner described in *City of St. Louis*.

Accordingly, it is clear that the City's annual compensation requirement is a tax under

Alabama law.

**B.     THE ANNUAL FEE IMPOSED IN THE INTERIM AGREEMENT
         EXCEEDS THE CITY'S AUTHORITY UNDER ALABAMA LAW**

Having determined that the annual compensation requirement is a tax, the second issue is

whether such tax is within the City's authority.  Level 3's summary judgment brief demonstrates

that the sole source of authority to tax telecommunications providers is set forth in Alabama

Code § 11-51-128(a), and that the City's tax exceeds the specifically delegated authority. (Def.

Mem. at 22-23, 25).  The City fails to directly respond to or rebut Level 3's showing.  Rather, the

primary thrust of the City's Second Motion is that it is granted different powers than counties,

including the power to impose annual "fees" on telecommunications providers that are unrelated

to the City's costs.  Specifically, the City relies on Alabama Code § 11-43-62 and Section 220 of

the Alabama Constitution.  However, those provisions do not support the City's assertion.

Rather, they further demonstrate that the annual fee imposed in the Interim Agreement exceeds

the City's authority.

Section 11-43-62 provides, in pertinent part, that a City "may sell or lease in such manner

as it may deem advisable any *franchise which it has power to grant*, and the moneys received

therefore shall be paid into the city treasury." Ala. Code § 11-43-62 (emphasis added).  Thus,

the issue is what "franchise" does the City have the power to grant.  The City asserts that Section

220 of the Alabama Constitution empowers it to grant a franchise to telecommunications

providers (indeed, the City asserts that Section 220 requires it). However, that is where the

City's position is incorrect, and its entire argument crumbles.

Section 220 of the Alabama Constitution provides that

> No person, firm, association, or corporation shall be authorized or
> permitted to use the streets, avenues, alleys, or public places of any city,
> town, or village for the construction or operation of any public utility or
> private enterprise, without first obtaining *the consent* of the proper
> authorities of such city, town, or village.

Ala. Const. Art. XII, § 220 (emphasis added). This provision does not support the City's

position.[2]

The Supreme Court of Alabama, in 1988, specifically held that Section 220 of the

Constitution does *not* empower cities to grant franchises to utilities. *Alabama Power Co. v.

State*, 527 So. 2d 678, 687 (Ala. 1988) (citing *Phenix City v. Alabama Power Co.*, 195 So. 894

(Ala. 1940)). In *Alabama Power*, the Court held that the power to franchise utilities belongs to

the State,[3] and Section 220 did not delegate that power to cities. *Id.* at 683-85. Rather, Section

220 merely allows cities to exercise a veto power to control the placement of specific items in

the streets.[4] *Id.* at 685.

---

[2] For reasons apparent in light of *Alabama Power Co. v. State*, the City cites no case law support
for its assertion about the "franchising" authority drawn from Section 220.

[3] In the case of telecommunications providers, this is particularly true. Pursuant to Alabama
Code § 37-2-4, the Alabama Public Service Commission ("PSC") is empowered to issue
Certificates Of Public Convenience And Necessity ("CPCN"), which are a prerequisite to
providing telecommunications services in the State (*i.e.*, the PSC is the arm of the State that
grants the "franchise" to operate in the State). It is undisputed in this case that Level 3 has
received a CPCN from the PSC. (SMF ¶ 23; Def. Exh. 2).

[4] Level 3 notes that to the extent such "veto" power were interpreted as permitting a city to reject
a telecommunications provider's construction altogether, it would be preempted by Section 253
of the federal Telecommunications Act, 47 U.S.C. § 253 (as described in detail in Level 3's
summary judgment submissions). As such, the "veto" power must be read as simply a manner of
expressing the reservation of a city's general right-of-way management and zoning authority.

Thus, the City does not have the power to grant Level 3 a "franchise," under Alabama law. Accordingly, the City cannot "sell or lease" such a franchise to Level 3, and cannot require compensation under Alabama Code § 11-43-62.

The City incorrectly, and without analysis, asserts that Alabama Code § 11-43-62 is, itself, the source of its franchise power. That interpretation – in addition to being in conflict with *Alabama Power*'s holding that cities have not been delegated the power to grant franchises – ignores the plain language of the statute. Section 11-43-62 does not supply the power to issue franchises, but rather says what the City may do regarding any franchise that it otherwise "has power to grant." Thus, Section 11-43-62 assumes on its face that the franchise power must come from elsewhere, and as demonstrated above, such power has not been granted in this case.

The first paragraph of Alabama Code § 11-43-62 also is not the source of any franchise power. The initial paragraph of the Section delegates the power to "regulate the use of the streets . . . and generally to control and regulate the use of the streets for any and all purposes." Ala. Code § 11-43-62. In that respect, it grants even less authority than Section 220 of the Alabama Constitution, which grants a "veto" power over what may be placed in the streets (but not the power to grant franchises). *Alabama Power*, 527 So. 2d at 684-85, 687. Ultimately, both Section 220 of the Constitution and the first paragraph of Alabama Code § 11-43-62 clearly reserve only traditional authority to manage issues related to the physical occupation of public rights-of-way (*i.e.*, time, place, and manner of construction issues) – not the power to grant franchises or impose fees on telecommunications companies.

## IV.   CONCLUSION

Based on the foregoing, and for the reasons stated in Level 3's brief in support of summary judgment, the City's "Second Motion" should be denied, and Level 3 granted summary judgment on Count II of its Counterclaims and its affirmative defenses numbers 6 and 7.

7

Respectfully submitted,

H. William Wasden (WASDW4267)
BOWRON, LATTA & WASDEN, P.C.
Post Office Box 16046
Mobile, Alabama 36616
Telephone:     251-344-5151
Facsimile:     251-344-9696


T. Scott Thompson
K.C. Halm
Cole, Raywid & Braverman, LLP
1919 Pennsylvania Avenue, NW
Suite 200
Washington, DC  20006
202-659-9750
202-452-0067 (fax)

**Attorneys for Level 3 Communications, LLC**

March 19, 2004

## CERTIFICATE OF SERVICE

I , William Wasden, Counsel for Level 3 Communications, hereby certify that on March 19, 2004, a copy of the foregoing Opposition was served on the following counsel of record in this matter by facsimile and U.S. Mail.

Arthur J. Madden, III
Madden & Soto
465 Dauphin Street
Mobile, AL  36602

William Wasden

Opposition to Prichard Second summary judgment motion (2).DOC